UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| ENIYAH BROWN MOORE; EBONIE BAIR, | : | |
| *INDIVIDUALLY AND AS PARENT/GUARDIAN* | : | |
| *OF MINOR CHILDREN A AND B*; and | : | |
| RASUL NAFIS MOORE, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 5:19-cv-02621 |
| | : | |
| SOLANCO SCHOOL DISTRICT; | : | |
| ANTHONY COX, *INDIVIDUALLY, AND* | : | |
| *IN HIS OFFICIAL CAPACITY AS* | : | |
| *SOLANCO HIGH SCHOOL FOOTBALL COACH*; | : | |
| LISA YANNUTZ; JOHN DOE; | : | |
| and N. Y., *A MINOR*, | : | |
| Defendants. | : | |

_____

**O P I N I O N**
**Defendant Solanco School District's Motion to Dismiss, ECF No. 15 - Granted**
**Defendant Cox's Motion to Dismiss, ECF No. 16 - Granted in part and Denied in part**
**Defendants Yannutz and N.Y.'s Motion to Dismiss, ECF No. 36 - Granted**

**Joseph F. Leeson, Jr.**                                                **July 10, 2020**
**United States District Judge**

## I.     INTRODUCTION

Plaintiff Ebonie Bair initiated this action on behalf of, and/or along with, herself and her four children alleging that her two adult children (Plaintiffs Eniyah Brown Moore and Rasul Nafis Moore) were subjected to a racially hostile educational and/or athletic environment while attending Solanco High School.  Named as Defendants are the Solanco School District; Anthony Cox, a football coach at Solanco High School; minor N.Y., a student at Solanco High School; and Lisa Yannutz and John Doe, the parents of N.Y.  The named Defendants have each filed a Motion to Dismiss.  For the reasons set forth below, this Court concludes Moore has stated a

claim in Count III against Cox under § 1981 and the Equal Protection Clause of the Fourteenth Amendment.  Because Doe has not joined in the motions to dismiss, the claims against him under Counts V and VII also survive.  All other parties and counts are dismissed, some with prejudice and some without prejudice, as discussed herein.

## II.    BACKGROUND

The Amended[1] Complaint alleges as follows:  Plaintiff Ebonie Bair is the mother and parent/guardian of two minor children, Minor Plaintiffs A and B, who are aged five and eight years of age and attend an elementary school owned, operated, managed, directed and/or controlled by Defendant Solanco School District.  *See* Am. Compl. ¶¶ 6-7.  Bair is also the mother of two adult children, Plaintiffs Rasul Nafis Moore ("Moore") and Eniyah Brown Moore ("Brown Moore")[2] who attended schools owned, operated, managed, directed, and/or controlled by Solanco. *See id.* at ¶¶ 6, 9.  Moore graduated from Solanco High School in June 2019, and Brown Moore graduated from Solanco High School in June 2018.  *See id.* at ¶ 18.  Defendant Anthony Cox was a football coach at Solanco High School.  *See id.* at ¶ 9.  Cox coached Moore and fellow student Defendant N.Y.  *See id.* at ¶¶ 22, 24.

The student body at Solanco High School is over 90% white.  *See* Am. Compl. ¶ 20. Plaintiffs assert there was a pervasive, racially discriminatory, and hostile environment at Solanco High School for African American students, including Moore and Brown Moore, that was sanctioned by Solanco teachers and/or staff, including Cox.  *See id.* at ¶¶ 21-22.  The Amended Complaint alleges, *inter alia*, Cox called Moore "n***a" multiple times during

---

[1]    The original complaint did not include Minor Plaintiffs A and B, nor Defendants N.Y. and N.Y.'s parents.  Plaintiffs filed an Amended Complaint in response to motions to dismiss filed by Cox and the Solanco School District.

[2]    Collectively, Plaintiffs Moore and Brown Moore are referred to as the "Moore Plaintiffs."

football practice and throughout the football season and also "Buckwheat" in reference to the character from the Little Rascals.  *See id.* at ¶ 23.  Solanco also allowed students to utter and/or publish racial slurs, including but not limited to the word "n****r."  *See id.*

On or about March 26, 2019, N.Y. posted a picture of Moore on N.Y.'s Instagram account of Moore in his Solanco football uniform, on Solanco's football field, but altered it to show Moore carrying a bucket of Kentucky Fried Chicken.  *See id.* at ¶ 24.  On the same Instagram account, N.Y. displayed an image of an African American man caught in a mouse trap with a bucket of Kentucky Fried Chicken used as the bait to lure him into the mouse trap.  *See id.* at ¶ 25.  Based on these actions, N.Y. was charged with a hate crime in Lancaster County, Pennsylvania.  *See id.* at ¶ 28.  After the publication, Cox summoned Moore into his office and/or the weight room at Solanco High School and told Moore that he should not be offended by the Instagram posts.  *See id.* at ¶ 29.

Plaintiffs allege that Cox's proclamation "served as the manifestation of a policy, practice, custom, proclamation, policy or edict."  *See id.* at ¶ 93.  They further contend that Cox's actions and/or inactions perpetuated a racially hostile athletic and educational environment at Solanco High School, by sending a message to the white students on the football team and/or at Solanco High that racist behavior would be given a pass.  *See id.* at ¶ 31.  Plaintiffs assert that Cox's actions and/or inactions "should not been a surprise" to Solanco because "Cox had displayed a history and pattern of racially discriminatory behavior, of which [] Solanco had explicit knowledge, including but not limited to his regular employment of the denigration of the word n***as to inter alia the African American high school students on his team. . . ."  *Id.* ¶ 33.

The Amended Complaint further alleges Solanco allowed students to wave Confederate flags during school football games and to display such flags on clothing during school hours and

on their cars in the school parking lot.  *See* Am. Compl. ¶¶ 23, 37.  Brown Moore raised

concerns with Solanco's Superintendent that she was extremely intimidated and offended by the

brazen and repeated displays of the Confederate flag, but the Superintendent failed to take any

corrective action against the displays of the Confederate flag, nor have any concerns about the

environment said flag created in a public school.  *See id.* at ¶ 39.  Plaintiffs contend the

Superintendent's failure to heed the complaints about the display of Confederate flags "served as

the manifestation of a policy, practice, custom, proclamation, policy or edict."  *See id.* at ¶ 94.

Solanco also failed to take any action to sanction or prevent students, who were in the

presence and hearing of teachers, from calling Brown Moore names such as "watermelon,"

"n****r," and "jigaboo."  *See id.* at ¶ 37.  This conduct began on Brown Moore's first day as a

transfer student in the fall of 2014 and continued through her senior year when, in the Spring of

2018, Brown Moore was in her political science class, which was discussing that year's

valedictorian speech, when a white student suggested to the class how ridiculous it would be if

Brown Moore spoke.  *See id.* at ¶¶ 37, 40.  The teacher's response was that Solanco doesn't

allow those types of students to speak because they don't articulate like a valedictorian should.

*See id.*  Brown Moore asserts that this was an egregious, unlawful, racist denigration of her by a

teacher at Solanco, and arguably one encouraged by the aforementioned hostile racist learning

environment that has been allowed to fester at Solanco High School.  *See id.*

The Moore Plaintiffs assert they were discriminated against because of their race and/or

ethnicity and required to attend high school in a racist and hostile environment, which hampered

their ability to receive an education and was detrimental to their intellectual, emotional, and

psychological development.  *See id.* at ¶¶ 41-42.  Bair asserts that based on the actions and/or

inactions of Defendants she is in eminently reasonable fear and apprehension that such a racially

harassing and hostile fate awaits her minor children, minor Plaintiffs A and B, who must one day attend Solanco High as it is the only public high school near their residence.  *See id.* at ¶ 43.

The Amended Complaint asserts the following counts: (I) brought by the Moore Plaintiffs against all Defendants for harassment and discrimination on the basis of ethnicity and race in violation of Title VI, 42 U.S.C. § 2000d; (II) brought by the Moore Plaintiffs against all Defendants for race discrimination in violation of 42 U.S.C. § 1981; (III) brought by the Moore Plaintiffs against all Defendants for numerous constitutional violations pursuant to 42 U.S.C. § 1983; (IV) brought by the Moore Plaintiffs against all Defendants for Monell liability under 42 U.S.C. § 1983; (V) brought by Moore against Cox, Yannutz, Doe, and N.Y. for conspiring to violate Moore's civil rights pursuant to 42 U.S.C. § 1985; (VI) brought by Bair against Solanco for a violation of 22 U.S.C. § 2201, *et seq.*; and (VII) brought by Moore against Yannutz, Doe, and N.Y. for negligence under Pennsylvania law.  *See id.*  Plaintiffs seek compensatory and punitive damages, as well as attorney's fees, and, as to Counts I through VI, the issuance of a consent decree and/or remedial program to remedy the allegedly historical pervasive environment of racial hostility in the Solanco School District.  *See id.*  Defendants Solanco, Cox, and Yannutz, on behalf of herself and N.Y., have each filed a motion to dismiss the Amended Complaint.  *See* ECF Nos. 15, 16, 36.  Doe, who has not been served with the Amended Complaint, has not joined in the motions.

## III.   LEGAL STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(6)

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche*

*Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Even under the general pleading requirements for states of mind set forth in Rule 9(b) of the Federal Rules of Civil Procedure, "[w]hen pleading knowledge, the complaint must still contain more than a 'conclusory allegation,' and the pleading must meet the 'less rigid — though still operative — strictures of Rule 8.'" *Gotthelf v. Toyota Motor Sales, U.S.A., In.*, 525 F. App'x 94, 103 n.15 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 686-87).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A district court may also sua sponte dismiss a complaint or claims therein against a non-moving defendant "provided that the complaint affords a sufficient basis for the court's action." *See Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980).  However, certain protections are guaranteed to the plaintiff.  *See id.*  "A court may not dismiss a complaint on the pleadings unless no set of facts could be adduced to support the plaintiff's claim for relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Additionally, "the plaintiff must be given

the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff

will be drawn." *Id.* (internal quotations omitted).

> **B.**     **Claims under Title VI of the Civil Rights Act – discrimination by entities in programs or activities receiving Federal financial assistance**

Section 601 of Title VI of the Civil Rights Act provides: "No person in the United States

shall, on the ground of race, color, or national origin, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." 42 U.S.C. § 2000d.  To state a claim under Title VI, a plaintiff

must show:

> 1.     there is racial or national origin discrimination; and

> 2.     the entity engaging in discrimination is receiving federal financial assistance.

*See Lei Ke v. Drexel Univ.*, No. 11-6708, 2015 U.S. Dist. LEXIS 118211, at *36 (E.D. Pa. Sep.

4, 2015).  As to the first element, to establish a prima facie case of discrimination in an

educational setting, the plaintiffs must show:

> 1.     they are members of a protected class;

> 2.     they suffered an adverse action at the hands of the defendants in pursuit of their

education;

> 3.     they are qualified to continue the pursuit of their education; and

> 4.     they were treated differently from similarly situated students who are not

members of a protected class.

*See id.* at *53.  Additionally, a Title VI claim may be based on a racially hostile environment.

*See Bridges v. Scranton Sch. Dist.*, 644 F. App'x 172, 179 (3d Cir. 2016).  Under this theory, the

plaintiffs must show that the school is "permeated with discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive" to create a subjectively and objectively hostile or

abusive environment.  *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 652 (1999); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205-06 and n.5 (3d Cir. 2001) (holding that the reasoning in *Davis*, which dealt with sexual harassment under Title IX, "applies equally to harassment on the basis of the personal characteristics enumerated in Title VI and other relevant federal anti-discrimination statutes").

Private individuals may sue to enforce Title VI and obtain both injunctive relief and damages.  *See Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  However, Title VI "prohibits only intentional discrimination."  *See id.* at 280.  "[F]unding recipients are properly held liable in damages only where they are deliberately indifferent to [] harassment, of which they have actual knowledge."  *Davis*, 526 U.S. at 650.  "Constructive knowledge is not sufficient."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014).  Thus, a school district cannot be held liable for the acts of its teachers or staff through respondeat superior liability.  *See Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 761 (E.D. Pa. 2011) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283 (1998)). *See also Davis*, 526 U.S. at 642 (holding that a school district may "be liable for damages only where the district itself intentionally acted in clear violation of Title [VI] by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge").

"[I]n the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education . . . ."  *Davis*, 526 U.S. at 652.  "Damages are not available for simple acts of teasing and name-calling among school children, []even where these comments target differences in [race]."  *Id.*  The "school may be held liable for a Title VI claim of student-on-student racial discrimination [only] when the school's response is 'clearly unreasonable in light of the known

circumstances.'" *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) (quoting *Davis*, 526 U.S. at 648).

"Moreover, because the harassment must occur 'under' 'the operations of' a funding recipient, *see* 20 U.S.C. § 1681(a); § 1687 (defining 'program or activity'), the harassment must take place in a context subject to the school district's control." *Davis*, 526 U.S. at 645. A school district has such control where "the misconduct occurs during school hours and on school grounds." *See id.* at 646-47 (concluding "that recipients of federal funding may be liable for 'subjecting' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority"). On the other hand, "harassment that takes place off of school grounds and/or outside of school hours does not occur under circumstances where the District exercised substantial control over either the harasser or the context in which the harassment occurred." *Williams v. Pennridge Sch. Dist.*, No. 15-4163, 2018 U.S. Dist. LEXIS 205957, at *20 (E.D. Pa. Dec. 4, 2018).

### C.      Section 1981 claims – intentional racial discrimination by state actors

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To state a discrimination claim under § 1981, the plaintiffs must allege facts showing:

1.      they are members of a racial minority;

2.      the defendant(s) had an intent to discriminate on the basis of race; and

3.      the discrimination concerned one or more of the activities enumerated in § 1981.

*See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).  To succeed on a hostile

educational environment claim under § 1981, the plaintiffs must show:

1.      they are members of a protected class;

2.      they were harassed because of race;

3.      the defendant(s) had actual knowledge of and was deliberately indifferent to the

harassment; and

4.      the harassment was so severe and objectively offensive that it deprived the

plaintiffs of access to the educational benefits or opportunities provided by the school.

*See Lei Ke*, 2015 U.S. Dist. LEXIS 118211, at *101-02.  "In examining whether an educational

environment is 'hostile,' a court must examine the totality of the circumstances, such as 'the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [a

student's] performance.'"  *Id.* at 102-03 (quoting *Miller v. Thomas Jefferson Univ.*, 565 F. App'x

88, 93 (3d Cir. 2014)).

### D.      Section 1983 claims – civil rights violations committed while acting under color of state law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of

the underlying right said to have been violated."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841

n.5 (1998).   The court must determine "whether the plaintiff has alleged a deprivation of a

constitutional right at all."  *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*).

Section "1983 is not itself a source of substantive rights, but merely provides a method for

vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94

(1989) (internal quotations omitted).

The court must also determine whether a defendant is acting under color of state law, i.e.,

whether the defendant is a state actor, which depends on whether there is "such a 'close nexus

between the State and the challenged action' that seemingly private behavior 'may be fairly

treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal

quotations omitted).

> To answer that question, [the United States Court of Appeals for the Third Circuit
> has] outlined three broad tests generated by Supreme Court jurisprudence to
> determine whether state action exists: (1) whether the private entity has exercised
> powers that are traditionally the exclusive prerogative of the state; (2) whether the
> private party has acted with the help of or in concert with state officials; and (3)
> whether the state has so far insinuated itself into a position of interdependence with
> the acting party that it must be recognized as a joint participant in the challenged
> activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

A "defendant in a civil rights action must have personal involvement in the alleged

wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode*

*v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Because vicarious liability is inapplicable

to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

**E.      Monell claims – against municipal entities based on implementation of a
         policy or custom**

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in

other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "[A] municipality can be found liable

under § 1983 only where the municipality itself causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95).  "[I]t is when execution of a [municipality's] policy[3] or custom,[4] whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at 694.  "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Under *Monell*, a local government entity may be liable under 42 U.S.C. § 1983 if the plaintiff can show either:

1.      an employee acted pursuant to a formal policy or a standard operating procedure;

2.      the alleged violations were taken by a person with policy-making authority; or

3.      an official with such authority has ratified the unconstitutional actions of a subordinate.

*See Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 123 n.7 (3d Cir. 2011).  The fact that the individual "-- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."  *Pembaur v. City of Cincinnati*, 475 U.S.

---

[3]      "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers."  *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690).

[4]      A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice.  *Monell*, 436 U.S. at 690.

469, 481-83 (1986).  "[W]hether an official had final policymaking authority is a question of state law."  *Id.* ("We hold that municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

Failing to train municipal employees can also be a source of liability, but "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  *City of Canton*, 489 U.S. at 388, 390. *See also Kneipp by Cusack v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996).  A three-part test has been formulated to determine whether a municipality's failure to train or supervise amounts to deliberate indifference.  *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999).  It must be shown:

    1.      municipal policymakers know that employees will confront a particular situation;

    2.      the situation involves a difficult choice or history of employees mishandling; and

    3.      the wrong choice by an employee will frequently cause deprivation of

constitutional rights.

*Id.*

      **F.**    **Fourteenth Amendment claims**

          **1.**    **State-created-danger claims – injury caused by a danger created by a state actor**

The Due Process Clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect its citizens from harms caused by private actors.  *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).  An exception to this rule is the

state-created danger doctrine.  *See Kneipp*, 95 F.3d at 1211.[5]  To assert a state-created danger

claim under the Fourteenth Amendment Due Process Clause, a plaintiff must plead:

1. "the harm ultimately caused [by the state actor's conduct] was foreseeable and fairly direct;"

2. "a state actor acted with a degree of culpability that shocks the conscience;"

3. "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and"

4. "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

*Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170-71 (3d Cir. 2017) (quoting *Bright v.*

*Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).  To adequately plead foreseeability

under the first element, a plaintiff must "allege an awareness on the part of the state actors that

rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put

the actors on notice of the harm."  *Phillips*, 515 F.3d at 238.  "Once the foreseeability element of

the state-created danger test has been determined, the complaint must also allege that the attack

---

[5] There is a second exception known as the "special relationship" exception, which "applies when a special relationship has been established because 'the State takes a person into its custody and holds him there against his will.'"  *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013) (quoting *Deshaney*, 489 U.S. at 199-200).  A public school/teacher/coach does not have such a "special relationship" with a student to protect against private actors, including other students.  *See id.* at 167-77 (concluding, "public schools, as a general matter, do not have a constitutional duty to protect students from private actors").  The exception therefore does not apply here.

or harm is a 'fairly direct' result of the defendant's acts." *Id.* at 239.  Under the second element,

"'[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends

upon the circumstances of a particular case.'"  *Mann*, 872 F.3d at 171 (quoting *Estate of Smith v.*

*Marasco*, 430 F.3d 140, 153 (3d Cir. 2005)). *See also Bridges*, 644 F. App'x at 178 (holding that

the conscience-shocking behavior required to state a substantive due process claim is a "stringent

liability standard").  The bar for proving the third element is not terribly high, and can exist

where a plaintiff is a member of a group that is subject to potential harm brought about by the

state's actions.  *See Mann*, 872 F.3d at 172.  The final element of a state-created danger claim

requires a showing that the defendant affirmatively used his authority in a way that created a

danger to the plaintiff or rendered him more vulnerable to danger.  *See id.*

### 2.      Equal protection claim – denial of equal protection of the laws

To state a claim for a violation of the Equal Protection Clause of the Fourteenth

Amendment, pursuant to 42 U.S.C. § 1983, the plaintiff must establish:

1.      the existence of purposeful discrimination; and

2.      the defendant's personal involvement in this discrimination.

*See Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (citing *Andrews v.*

*Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).  The plaintiff must show that any disparate

treatment was based upon his membership in a protected class (race, gender, etc.).  *See id.*

"Personal involvement exists where the defendant engaged in the purposeful discriminatory

conduct himself or knowingly acquiesced to it."  *Dowling v. Commonwealth Liquor Control Bd.*,

No. 88-7568, 1992 U.S. Dist. LEXIS 17438, at *20-21 (E.D. Pa. Oct. 26, 1992).

**G.      Section 1985 claims – conspiracy to violate civil rights**

Section 1985(3) proscribes conspiracies against certain classes of people.  A conspiracy

arises when "two or more persons engaged therein do, or cause to be done, any act in furtherance

of the object of such conspiracy, whereby another is injured in his person or property, or

deprived of having and exercising any right or privilege of a citizen of the United States."  42

U.S.C. § 1985(3).  To assert a prima facie claim of conspiracy, a plaintiff must show:

1.      "a combination of two or more persons acting with a common purpose to do an

unlawful act or to do a lawful act by unlawful means or for an unlawful purpose,"

2.      "an overt act done in pursuance of the common purpose," and

3.      "actual legal damage."

*Schlichter v. Limerich Twp.*, No. 04-CV-4229, 2005 WL 984197, at *10 (E.D. Pa. Apr. 26,

2005).  A plaintiff must assert "specific factual allegations of combination, agreement, or

understanding among all or between any defendants to plot, plan, or conspire to carry out the

alleged chain of events."  *Germantown Cab Co. v. Phila. Parking Auth.*, No. 14-4686, 2015 WL

4770722, at *10 (E.D. Pa. Aug. 12, 2015) (quoting *Hammond v. Creative Fin. Planning Org.*,

800 F. Supp. 1244, 1248 (E.D. Pa. 1992)).  The allegations must contain particular and exacting

facts that demonstrate the "period of the conspiracy, object of the conspiracy, and certain other

actions of the alleged conspirators to achieve the purpose."  *Id.* (quoting *Marchese v. Umstead*,

110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)); *see also Chruby v. Kowaleski*, 534 F. App'x 156, 160

(3d Cir. 2013) (A plaintiff must allege facts that plausibly suggest a meeting of the minds.).

**H.      Negligence claim under Pennsylvania law**

To state a claim for negligence under Pennsylvania law, a plaintiff must show:

1.      the defendant owed the plaintiff a duty or obligation recognized by law;

2.      a breach of that duty;

3.      a causal connection between the conduct and the resulting injury; and

4.      actual damages.

*Martinez v. United States*, 682 F. App'x 139, 141 (3d Cir. 2017) (citing *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994)).  "Whether the defendant owed a duty of care under the first element is a question of law."  *Sabric v. Martin*, 532 F. App'x 286, 289 (3d Cir. 2013) (citing *Matharu v. Muir*, 29 A.3d 375, 384 (Pa. Super. Ct. 2011)).  "Generally, there is no duty to control the acts of a third party unless the 'defendant stands in some relationship with either the person whose conduct needs to be controlled or in a relationship with the intended victim of the conduct'. . . . A special relationship is limited to the relationships described in Sections 316-319 of the Restatement (Second) of Torts."  *See Brisbine v. Outside in Sch. of Experiential Educ., Inc.*, 799 A.2d 89, 93 (Pa. Super. 2002).  Section 316 of the Restatement of Torts provides:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316 (1965).  Accordingly, in Pennsylvania, "the mere relation of parent and child imposes upon the parent no liability for the torts of the child, but the parents may be liable where the act of the child is done as the agent of the parents or where the negligence of the parents makes the injury possible."  *Condel v. Savo*, 39 A.2d 51, 52 (Pa. 1944).

## I.      Punitive damages

Punitive damages are awarded to punish a tortfeasor for "outrageous conduct" and are "proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Odell v. CIT Bank*, No. 17-1850, 2017 U.S. Dist. LEXIS 136190, at *17 (E.D. Pa. 2017) (quoting *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005)).

## IV.   ANALYSIS

### A.   Count I under Title VI

#### 1.   Count I against Solanco is dismissed without prejudice.

Nowhere in the Amended Complaint do Plaintiffs specifically allege that Solanco knew about the allegedly racial and discriminatory conduct of Cox, N.Y., or of any other student or teacher.  Rather, Plaintiffs' allege that Cox's actions and/or inactions "should not have been a surprise to [] Solanco" because "Cox had displayed a history and pattern of racially discriminatory behavior, of which [] Solanco had explicit knowledge, including but not limited to his regular employment of the denigration of the word n***as to inter alia the African American high school students on his team. . . ."  *See* Am. Compl. ¶ 33.

Although this Court is required to accept all well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Plaintiffs' allegation regarding knowledge is a legal conclusion and not entitled to a presumption of truth.  *See David v. Neumann Univ.*, 187 F. Supp. 3d 554, 561-62 (E.D. Pa. 2016) (concluding that allegations the University knew or should have known that its faculty discriminated against the student-plaintiff and created a racist environment in violation of Title VI by referring to bone structures in the human skeleton as "slaves" and

"slave masters" during classes was "a legal conclusion that, without factual allegations to support it, is not entitled to a presumption of truth").

Moreover, an allegation that Cox's behavior "should not have been a surprise" is insufficient to state a claim under Title VI because it does not show actual knowledge or deliberate indifference by Solanco.  *See S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 266 n.26 (3d Cir. 2013) ("Deliberate indifference requires actual knowledge; allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." (citing *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012)).  Similarly, there are no allegations that Solanco knew about N.Y.'s conduct, such that its response could be clearly unreasonable. To the extent Plaintiffs may seek to hold Solanco liable for N.Y.'s behavior, the claim is insufficient for an additional reason: the allegations do not show that Solanco had control over N.Y. at the time of the Instagram postings.  *See M.S. v. Susquehanna Twp. Sch. Dist.*, No. 1:13-cv-02718, 2017 U.S. Dist. LEXIS 47916, at *29 (M.D. Pa. Mar. 29, 2017) (dismissing Title IX claims against the school district because the harassing social media interactions were not reported to school district officials and, also, because the social media harassment did not occur under circumstances where the school district exercised substantial control over either the harasser or the context in which the harassment occurred).

Although the allegations are sufficient to show that Solanco had knowledge about the complaints regarding the displays of the Confederate flag on school property, these factual allegations are also insufficient to state a claim under Title VI.  In order to protect the learning environment, a school "may restrict school speech that threatens a specific and substantial disruption to the school environment or that 'inva[des] . . . the rights of others.'"  *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 303-04 (3d Cir. 2013) (citing *Davis*, 526 U.S. at

652; *Saxe*, 240 F.3d at 205).  However, "the prohibition of expression of one particular opinion,

at least without evidence that it is necessary to avoid material and substantial interference with

schoolwork or discipline, is not constitutionally permissible." *Tinker v. Des Moines Indep.*

*Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969).  It is only where there have been racial problems

involving the Confederate flag that a public school may constitutionally restrict displays of the

Confederate flag.  *See Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 254 (3d Cir.

2002).  "In the absence of such evidence, courts have concluded that school authorities have

failed to establish a sufficient likelihood of disruption to support banning the flag." *Id.*  Here,

although Plaintiffs sufficiently allege that Solanco had actual notice that Brown Moore was

intimidated and offended by the repeated displays of the Confederate flag by students on school

property, there are insufficient allegations to show that such displays materially interfered with

Plaintiffs' schoolwork or caused a substantial disruption to the school environment.  Without

such a showing, Solanco could not ban the Confederate flag and therefore did not violate

Plaintiffs' Title VI rights by failing to act on Brown Moore's complaints.

Count I as to Solanco is dismissed without prejudice and with leave to amend.[6]

## 2.     Count I is dismissed with prejudice as to the individual Defendants.

The individual Defendants, in near identical briefs, assert that Count I should be

dismissed as to them because Title VI does not provide for individual liability.  *See* Cox Mem. 5-

---

[6]      *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a
plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a
District Court must permit a curative amendment, unless an amendment would be inequitable or
futile").  Although Plaintiffs previously filed an amended complaint, it was filed before the Court
issued an opinion identifying the deficiencies in the pleadings and there is nothing to suggest that
Defendants will be prejudiced by allowing Plaintiffs an opportunity to amend.  *See Cornell &*
*Co. v. OSHRC*, 573 F.2d 820, 823 (3d Cir. 1978) ("It is well-settled that prejudice to the non-
moving party is the touchstone for the denial of an amendment." (citing *Zenith Radio Corp. v.*
*Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971))).

7, ECF No. 16-3; Yannutz Mem. 7-8, ECF No. 34.  They quote *Griffin v. Berks County Hous.*

*Auth.*, 2011 U.S. Dist. LEXIS 109823, *44 (E.D. Pa. Sept. 26, 2011), explaining, in part:

> The United States Court of Appeals for the Third Circuit has not addressed in a precedential opinion the issue of whether Title VI imposes liability on individual defendants. However, in a nonprecedential decision, the Third Circuit agreed with the reasoning of precedential decisions of the Eleventh Circuit and the Sixth Circuit which held that "because Title VI forbids discrimination only by recipients of federal funding, individuals cannot be held liable under Title VI." *Shannon v. Lardizzone*, 334 Fed. Appx. 506, 508 (3d Cir. 2009) (per curiam) (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1169 (11th Cir. 2003); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996)).

*Id.*  The individual Defendants further cite to another non-precedential opinion of the Third

Circuit Court of Appeals and to other district court opinions in the Third Circuit that have

similarly concluded that Title VI does not provide for individual liability.  *See, e.g.* Cox Mem. 6

(citing *Whitfield*, 412 Fed. Appx. at 521); *Webb v. Susquehanna Twp. Sch. Dist.*, 93 F. Supp. 3d

343, 351 (M.D. Pa. Sept. 26, 2015)).  In response, Plaintiffs offer no legal authority to support

their claim, instead suggesting, also without legal support, that "Defendant's argument is moot,

and/or otherwise best suited for the summary judgment stage."  *See* Pls.' Reply Cox 4, ECF No.

17; Pls.' Reply Yannutz 5, ECF No. 38.[7]

    For the reasons stated in the numerous opinions within this Circuit, this Court agrees that

the Title VI does not provide for individual liability.  Count I is dismissed with prejudice[8] as to

the individual Defendants: Cox, Yannutz, Doe,[9] and N.Y.

---

[7]    Plaintiffs' counsel did not number the pages in the reply briefs; therefore, the Court cites to the page numbers assigned by the Electronic Filing System.

[8]    Because the claim fails as a matter of law, leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

[9]    *See Sullivan Assocs. v. Dellots, Inc.*, No. 97-5457, 1997 U.S. Dist. LEXIS 20043, at *21-22 (E.D. Pa. Dec. 16, 1997) (dismissing a claim sua sponte against a defendant who had not joined the motion to dismiss the claim because the plaintiff could "'prove no set of facts in support of [these claims] which would entitle [it] to relief'" (quoting *Conley*, 355 U.S. at 45)).

### B.    Count II under § 1981

#### 1.    Count II is dismissed with prejudice as to Solanco, for consideration under Counts III and IV.

Solanco asserts that Count II should be dismissed for two reasons: (1) because Plaintiffs have failed to identify a contractual right, and (2) because it merges into the § 1983 claim.  *See* Solanco Mem. 8.  In support of its first argument, Solanco quotes the Supreme Court holding that "[a]ny claim brought under § 1981 [] must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  Solanco also cites a Third Circuit Court of Appeals case in which the court affirmed the entry of summary judgment in favor of the school defendants (including the Board of Education, two schools, school principals, and the superintendents of the school district) because the plaintiffs "did not reference any contractual right on which their § 1981 claim could be grounded and because the context of the case—two children attending public school—does not suggest any contractual rights."  *See L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 550 (3d Cir. 2017) (considering claims that two African American children experienced numerous incidents of racial discrimination and retaliation at school).  Plaintiffs respond that § 1981 extends beyond the mere making of contracts and includes the right "to the full and equal benefit of all laws. . . ."  *See* Pls.' Resp. Solanco Mot. 7, ECF No. 18 (quoting 42 U.S.C. § 1981(a)).  They contend their claims, including a racially hostile environment and disparate treatment, are covered by this equal protection provision of the statute.  *See id.*

Both parties are correct, in part.  The "full and equal benefit" clause gives § 1981 broader applicability than the mere right to contract.  *See Goodman v. Lukens Steel Co.*, 777 F.2d 113, 132 (3d Cir. 1985); *Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir. 1977).  However, "only state actors can be sued under the 'full and equal benefit' clause of § 1981."  *Brown*, 250 F.3d at

799.  That said, "because Congress neither explicitly created a remedy against state actors under

§ 1981(c), nor expressed its intent to overrule *Jett*,[10] . . . 'the express cause of action for

damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights

guaranteed in § 1981 by state governmental units.'"  *McGovern v. City of Phila.*, 554 F.3d 114,

120-21 (3d Cir. 2009) (quoting *Jett*, 491 U.S. at 733, and affirming the district court's decision to

dismiss the § 1981 claim).

Count II, pursuant to § 1981, is therefore dismissed with prejudice as to Solanco.  *See*

*Shipley v. Qiao Hong Huang*, No. 19-654, 2019 U.S. Dist. LEXIS 53401, at *6 n.24 (E.D. Pa.

Mar. 28, 2019) (dismissing the § 1981 claims as to the state defendants).  Nevertheless, the Court

will consider whether Plaintiffs' rights under § 1981 were violated by Solanco in the context of

their § 1983 claim in Counts III and IV.

### 2.     Count II is dismissed with prejudice as to Cox, for consideration under Counts III and IV.

For the reasons set forth above and because a high school football coach is a state actor,

*see Mann*, 872 F.3d 165, Count II pursuant to § 1981 is dismissed with prejudice as to Cox.  *See*

*Shipley*, 2019 U.S. Dist. LEXIS 53401, at *6 n.24 (dismissing the § 1981 claims as to the state

defendants).  The Court will consider Plaintiffs' § 1981 claim against Cox in the context of the §

1983 claim in Counts III and IV.

### 3.     Count II is dismissed with prejudice as to N.Y., Yannutz, and Doe.

The Moore Plaintiffs do not allege there is a contractual relationship between them and

N.Y., Yannutz, and/or Doe.  Rather, Plaintiffs rely on the "full and equal benefit" clause of §

---

10      *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) (holding "that the express cause
of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of
the rights guaranteed in § 1981 by state governmental units").

1981.  As previously explained, however, "only state actors can be sued under the 'full and equal benefit' clause of § 1981."  *See Brown*, 250 F.3d at 799.  Plaintiffs' conclusory allegation under Count III that all "Defendants' actions were taken under color of state law," *see* Am Compl. ¶ 73, is a legal conclusion that need not be accepted as true and there are no factual allegations that show either N.Y., Yannutz, or Doe is a state actor.  Accordingly, the § 1981 claim fails as a matter of law and Count II is dismissed with prejudice[11] as to N.Y., Yannutz, and Doe.[12]

### C.    Count III under § 1983 based on Defendants' actions/inactions

In addition to an alleged violation of the Moore Plaintiffs' rights under § 1981, the § 1983 claim in Count III is based on alleged violations of the Moore Plaintiffs' rights under "the 1st Amendment, the 4th Amendment, the 5th Amendment, the 8th Amendment, the Due Process Clause of the 14th Amendment, the Equal Protection Clause of the 14th Amendment, the Substantive Due Process rights of the 14th Amendment, and/or 42 U.S.C. §1983 and/or the Pennsylvania Constitution."  *See* Am. Compl. ¶¶ 76-77.  Plaintiffs offer no information in the Amended Complaint or in their responses to the motions to dismiss, aside from their general factual allegations discussed above, to explain how their rights under each of these laws was violated.

Nothing in the allegations suggests that Plaintiffs' rights under the First, Fourth, Fifth, or Eighth Amendments or under the procedural due process clause of the Fourteenth Amendment were violated or even implicated.  Additionally, § 1983 is not itself a source of substantive rights.  *See Graham*, 490 U.S. at 393-94.  These claims are therefore dismissed with prejudice[13]

---

[11]    Because there is no suggestion that there was a contract or that these Defendants are state actors, leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

[12]    *See Sullivan Assocs.*, 1997 U.S. Dist. LEXIS 20043, at *21-22.

[13]    Because there are no allegations to suggest Plaintiffs' rights under these Amendments are in any way implicated, leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

from Count III.  Because the Moore Plaintiffs fail to specify which section(s) of the Pennsylvania Constitution on which they base Count III, it too is dismissed, but without prejudice and with leave to amend.  Whether the factual allegations support a violation of Plaintiffs' rights under § 1981 or under the Fourteenth Amendment is discussed below as they relate to each Defendant.

### 1. As to Solanco, Count III is dismissed with prejudice, for consideration under Count IV.

A school district may only be held liable under § 1983 for violating rights under § 1981 if the violation was the result of municipal custom, policy, or practice.  *See Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 478 (E.D. Pa. 2013) (explaining that a cause of action under § 1983 for the school district's alleged violation of the rights guaranteed in § 1981 requires evidence of a policy, practice, custom, or failure to train).  Similarly, a claim under § 1983 for violation of the Equal Protection Clause by a school district requires a showing that the harassment was the result of municipal custom, policy, or practice.  *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58 (2009) (citing *Monell*, 436 U.S. at 694).  To state a substantive due process claim against a school district under the state-created-danger doctrine, the district's policy or custom must have been the "moving force" behind the violation.  *See Poe v. Se. Delco Sch. Dist.*, 165 F. Supp. 3d 271, 279 (E.D. Pa. 2015) (concluding that while violations of the students' "Fourteenth Amendment rights caused by the District's policies may properly be considered under the [students'] Monell claim, the District is not a proper defendant for the state-created danger claim" (citing *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006)).  Count III is therefore dismissed with prejudice as to Solanco, but the claims will be considered under Count IV (*Monell*).

### 2. Moore's § 1981 and equal protection claims under the Fourteenth Amendment in Count III may proceed against Cox.

In his Motion to Dismiss, Cox argues that the § 1983 claim is asserted against all Defendants collectively and that Plaintiffs fail to articulate what alleged discriminatory conduct by Cox resulted in a deprivation of Plaintiffs' rights.  *See* Cox Mem. 9-10, ECF No. 16.  Cox also contends that Plaintiffs fail to specifically allege that Cox was acting "under color of law" at the time of his allegedly unlawful comments and/or conduct.  *See id.*

Aside from Plaintiffs' failure to explain how their rights under the First, Fourth, Fifth, or Eighth Amendments or under the procedural due process clause of the Fourteenth Amendment were violated, which was previously discussed, the Amended Complaint clearly identifies the conduct attributed to Cox that forms the basis of the claims under § 1983.  *See, e.g.* Am. Compl. ¶¶ 23-29, 71.  Further, contrary to Cox's suggestion, the Amended Complaint does specifically allege that Cox was a state actor at the time of his allegedly unlawful conduct, which occurred during football practice or in relation to the football team.  *See id.* and ¶ 10 ("Defendant Anthony Cox was, at any and all times relevant, an adult individual acting under the color of state law as the football coach at Solanco High School. . . ."). *See also Mann*, 872 F.3d 165 (providing that a high school football coach is a state actor).  The Amended Complaint therefore satisfies Rule 8 and sufficiently places Cox on notice of the claims against him.  *See* Fed. R. Civ. P. 8(a)(2) (requiring a pleading to contain "a short and plain statement showing that the pleader is entitled to relief").

Accepting these allegations as true and drawing all reasonable inferences therefrom, Moore, but not Brown Moore, has stated a claim against Cox under § 1981 and the Equal Protection Clause of the Fourteenth Amendment, only.  *See Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (determining that whether use of the n-word can be sufficiently "severe or pervasive" is context-specific, but may be sufficient to state a claim under § 1981).  The

allegations fail to state a substantive due process claim against Cox because the allegations are insufficient to show that Moore (or Brown Moore) suffered the requisite harm.  *See Carey v. City of Wilkes-Barre*, 410 F. App'x 479, 483 (3d Cir. 2011) (holding that emotional distress is not a cognizable harm for a state-created danger claim).[14]  Moore's substantive due process claim against Cox is therefore dismissed without prejudice and with leave to amend.  All of Brown Moore's claims in Count III are dismissed with prejudice.[15]

### 3. Count III is dismissed with prejudice as to Yannutz, N.Y., and Doe.

Plaintiffs' conclusory allegation that all "Defendants' actions were taken under color of state law," *see* Am Compl. ¶ 73, is a legal conclusion that need not be accepted as true and there are no factual allegations that show either Yannutz, N.Y., or Doe is a state actor.  Accordingly, the § 1983 claim fails as a matter of law and Count III is dismissed with prejudice[16] as to Yannutz, N.Y., and Doe.[17]

### D. Count IV- Monell claim under § 1983

---

[14]    Whether Cox's behavior is conscious-shocking, another required element in a substantive due process claim, is a close call.  *Cf. Bridges*, 644 F. App'x at 178 (finding that the second-grade teacher's conduct did not rise to the level of a constitutional violation, such conduct including: giving detention to only the plaintiff-student, but not to the other students who started a fight; doing nothing in response when a student tried to jab the plaintiff-student in the eye with a pencil during class; turning the contents of the plaintiff-student's desk over and yelling at the plaintiff-student to pick his things up; calling the plaintiff-student: "dummy," "stupid," and "lazy" on two occasions; and moving the plaintiff-student's crutches after he had sustained an ankle injury and leaving him to "crawl" for them; etc.), *with Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 667 (2d Cir. 2012) (concluding that the jury reasonably could have found that the harassment of the high-school student, which continued for approximately two years and included racial slurs including the n-word, went beyond simple teasing and name-calling).

[15]    Because none of the allegations pertaining to Cox relate to Brown Moore, granting her leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

[16]    Because there is no suggestion that these Defendants are state actors, leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

[17]    *See Sullivan Assocs.*, 1997 U.S. Dist. LEXIS 20043, at *21-22.

As previously discussed regarding Count III, nothing in the allegations suggests that Plaintiffs' rights under the First, Fourth, Fifth, or Eighth Amendments or under the procedural due process clause of the Fourteenth Amendment were violated or even implicated.  *See* Am. Compl. §§ 81-85, 92, 96.  These claims are dismissed with prejudice[18] from Count IV.  To the extent Count IV alleges violations of Plaintiffs' rights secured by § 1981, the Equal Protection Clause, and the Fourteenth Amendment's substantive due process guarantee under the state-created-danger doctrine and for Solanco's failure to train, investigate, supervise, and discipline its employees, these claims are addressed below.

### 1.	Count IV is dismissed without prejudice as to Solanco.

Plaintiffs repeatedly allege that Defendants' actions were undertaken as part of, and that the racially hostile environment at Solanco was permitted by, the execution of a custom, policy, and/or practice.  *See, e.g.* Am. Compl. ¶¶ 72, 80-81, 89.  But, Plaintiffs never allege what was the custom, policy, and/or practice.  These allegations are therefore insufficient to state a claim.  *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (holding that to satisfy the pleading standard, the plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was"). *See also Kingsmill v. Szewczak*, 117 F. Supp. 3d 657, 672 (E.D. Pa. 2015) (finding that the plaintiff failed to allege well-pled facts in support of his *Monell* claim with respect to a policy or custom because the plaintiff's allegation regarding a police officer's prior misconduct and the City's alleged knowledge of it was merely "a legal conclusion styled as a factual allegation").

---

[18]	Because there are no allegations to suggest Plaintiffs' rights under these Amendments are in any way implicated, leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

As to Plaintiffs' allegation that when Cox proclaimed that there was nothing offensive about N.Y.'s postings, such proclamation served as the manifestation of a policy, practice, custom, proclamation, policy or edict for the purposes of Monell liability, *see* Am. Compl. ¶ 93, the allegation is insufficient for at least three reasons,  First, a "policy cannot ordinarily be inferred from a single instance of illegality. . ." *Losch v. Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984).  Second, there is nothing tying Cox's conduct to Solanco.  *See Bush v. City of Phila.*, No. 98-0994, 1999 U.S. Dist. LEXIS 18605, at *7-8 (E.D. Pa. Nov. 23, 1999) (finding that the allegations that the actions of the individual defendants "were manifestations of established customs, policies and/or traditions that are condoned by the Philadelphia Police Department . . ." was insufficient in the absence of evidence that the City had a policy or custom connected in any way to the actions of these individual defendants).  Third, Cox, a football coach, did not have final policy-making authority that could bind Solanco.  *See Flood v. Sherk*, 400 F. Supp. 3d 295, 308 (W.D. Pa. 2019) (explaining that "district courts in the Third Circuit appear to uniformly refuse to consider a school principal to be a final policymaker such that a principal's disciplinary decisions, without more, could subject a school district to liability under § 1983").

For the first and third reason, Plaintiffs' allegation that when the Superintendent failed to act in response to Brown Moore's complaints about the displays of Confederate flag it served as the manifestation of a policy, practice, or custom, *see* Am. Compl. ¶ 94, also fails to state a claim.  First, not only is the Superintendent's failure to respond to a single complaint insufficient to infer a policy, *see Losch*, 736 F.2d at 911, but Plaintiffs must show "more than a mere failure to act or investigate," *see J.H. v. City of Phila.*, No. 06-2220, 2008 U.S. Dist. LEXIS 65134, at *35-36 (E.D. Pa. Aug. 19, 2008).  Second, "[w]hile it is plausible that a superintendent may carry such final authority, the complaint lacks any facts to show that the school board in fact

delegated such authority to the superintendent." *Lantz v. Waynesboro Area Sch. Dist.*, No. 1:16-CV-0224, 2016 U.S. Dist. LEXIS 142243, at \*23 (M.D. Pa. Oct. 14, 2016). *See also* 24 P.S. § 10-1081.[19]  Moreover, the allegations do not show that Solanco's failure to ban the Confederate flag amounts to conscious-shocking behavior. *See Mann*, 872 F.3d at 171.

      Plaintiffs' claim that Solanco failed to take any action to sanction or prevent students from making racial slurs also fails to state a claim because a school's failure to take corrective action is not an "affirmative act." *See G.S. v. Penn-Trafford Sch. Dist.*, No. 19-3309, 2020 U.S. App. LEXIS 15326, at \*7-8 (3d Cir. May 13, 2020) (holding that "a school's failure to respond to reports of bullying cannot give rise to liability under § 1983 because it is not an affirmative act"); *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 503 (W.D. Pa. 2018) (holding that "harm caused by student-on-student bullying is not a constitutional harm that *Monell* protects against").

      Finally, Plaintiffs allege that Solanco is liable based on its failure to properly train, investigate, supervise, and discipline its employees, including Cox. *See* Am. Compl. ¶¶ 72, 82. Plaintiffs identify five broad areas in which Solanco was deficient. *See id.* ¶ 82.  However,

> failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both [1] contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and

---

[19]    Section 10-1081, "Duties of superintendents," provides:

The duties of district superintendents shall be to visit personally as often as practicable the several schools under his supervision, to note the courses and methods of instruction and branches taught, to give such directions in the art and methods of teaching in each school as he deems expedient and necessary, and to report to the board of school directors any insufficiency found, so that each school shall be equal to the grade for which it was established and that there may be, as far as practicable, uniformity in the courses of study in the schools of the several grades, and such other duties as may be required by the board of school directors. The district superintendent shall have a seat on the board of school directors of the district, and the right to speak on all matters before the board, but not to vote.

[2] circumstances under which the supervisor's actions or inaction could be found
to have communicated a message of approval to the offending subordinate.

*Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).  "It is not sufficient merely to

show that a particular [employee] acted improperly;" rather, the alleged failure to adequately

supervise "must also cause the violation about which the plaintiff complains."  *See Strauss v.*

*Walsh*, Nos. 01-3625, 02-4383, 2002 U.S. Dist. LEXIS 24717, at *10-11 (E.D. Pa. Dec. 17,

2002).

As previously discussed, the allegations are insufficient to show that Solanco had

knowledge of the discriminatory conduct of any of its employees.[20]  Plaintiffs' allegations that

Cox had a "history" or "pattern" of racially discriminatory behavior is also insufficient because

such allegations are wholly unsupported and nothing more than legal conclusions.  *See Connick*

*v. Thompson*, 563 U.S. 51, 62 (2011) (holding that a "pattern of similar constitutional violations

by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for

purposes of failure to train").

Count IV as to Solanco is therefore dismissed in its entirety as to Solanco.  Dismissal is

without prejudice to the extent it is based on a violation of Plaintiffs' rights under § 1981, the

Equal Protection Clause, the state-created-danger doctrine of the Fourteenth Amendment, and a

failure to train or supervise.

### 2. Count IV is dismissed with prejudice as to the individual Defendants.

*Monell* liability applies only to municipalities, not to individuals.  *See Lepre v. Lukus*,

602 F. App'x 864, 869 n.4 (3d Cir. 2015) (concluding that the district court erred in applying the

---

[20]   To the extent Solanco had knowledge of the actions of its Superintendent, because his
conduct did not violate Plaintiffs' rights, the failure to train claim necessarily fails.  *See Bridges*,
644 F. App'x at 178 ("Appellants cannot recover from the School District under Section 1983 for
a failure to train because there was no underlying constitutional violation.").

Monell test to the § 1983 claims against the individual defendant).  Count IV against the

individual defendants, Cox, Yannutz, N.Y., and Doe[21] is therefore dismissed with prejudice.[22]

> ### E.       Count V under § 1985 is dismissed without prejudice as to Cox, N.Y., Yannutz, it may proceed against Doe.

Moore alleges in Count V that Cox, Yannutz, Doe, and N.Y. conspired to violate his civil

rights pursuant to 42 U.S.C. § 1985 by agreeing to attempt to repress Moore's complaints about

N.Y.'s Instagram postings so that N.Y. could remain on the football team.  However, there are no

factual allegations to support this conclusory allegation.  *See Chruby*, 534 F. App'x at 160 ("The

complaint must not plead merely a 'conclusory allegation of agreement at some unidentified

point.'" (quoting *Twombly*, 550 U.S. at 557).  As previously discussed, the Amended Complaint

does not even allege that Yannutz and Doe had knowledge of N.Y.'s conduct, let alone that any

of these Defendants reached any type of agreement.  *See id.* (holding that "the complaint failed to

make allegations of conspiracy with the requisite specificity," and affirming dismissal of the

conspiracy claim).  Although the claim is insufficient to state a claim against all the individual

Defendants, because an amendment could cure the pleadings, the claim may proceed as to Doe,

who has not moved to dismiss the claim.  *See Conley*, 355 U.S. at 45-46 (providing that sua

sponte dismissal can only be granted if "no set of facts" in support of the claim could entitle the

plaintiff to relief).  Count V is dismissed without prejudice as to Cox, Yannutz, and N.Y.  In

amending the complaint as to these Defendants, Moore is granted leave to amend the claim as to

Doe as well if he so chooses.

---

[21]     *See Sullivan Assocs.*, 1997 U.S. Dist. LEXIS 20043, at *21-22.

[22]     Because the claim fails as a matter of law, amendment would be futile.  *See Gass v. Matthews*, No. 18-2360, 2018 U.S. Dist. LEXIS 202100, at *8-9 (E.D. Pa. Nov. 28, 2018) (dismissing the individual defendants with prejudice because "Monell liability applies only to municipalities, not individuals" (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002)).

**F.      Count VI is dismissed without prejudice as to Solanco.**

Count VI of the Amended Complaint, brought by Bair against Solanco, alleges a violation of 22 U.S.C. § 2201, *et seq.*, and seeks monetary and equitable relief.  In its Motion to Dismiss, Solanco correctly asserts that 22 U.S.C. § 2201 is captioned "Assistance to Disadvantaged Children in Asia" and has absolutely no relevancy to the allegations of the instant action.  *See* Solanco Mem. 15.  Plaintiffs respond that the labelling of Count VI was a typo and "obviously" was intended to be asserted under 28 U.S.C. § 2201 of the Declaratory Judgment Action.  Plaintiffs then assert "Defendant makes no other argument to support dismissal of Plaintiffs' declaratory judgment claim, which has otherwise been extensively pled . . . [and that] Defendant's Motion in this regard should be denied."  Pls.' Opp. Solanco Mot. 8.

Despite Plaintiffs' suggestion, the typo was not "obvious," especially because the Count seeks not only declaratory relief, but also damages "in an amount exceeding $150,000, plus punitive damages."  *See* Am. Compl., Count VI.  Also, a claim under the Declaratory Relief Act was not included in the original complaint.  Thus, Solanco was not put on notice of such a claim and cannot be expected to have made arguments regarding its merits.  Moreover, because the underlying claims against Solanco have been dismissed for failure to state a claim, there is no basis for granting a declaratory judgment against Solanco.  *See Impala Platinum Holdings Ltd. v. A 1 Specialized Servs. & Supplies, Inc.*, No. 16-1343, 2016 U.S. Dist. LEXIS 127055, at *70 (E.D. Pa. Sep. 16, 2016).  Count VI, which alleges a violation of 22 U.S.C. § 2201, is dismissed without prejudice[23] to Bair's right to amend to state a claim under 28 U.S.C. § 2201.

---

[23]      The Court questions whether Bair, who asserts that she is in eminently reasonable fear that a racially harassing and hostile fate awaits her minor children because Solanco High School is the only public high school in the vicinity of their residence, *see* Am. Compl. ¶ 43, can sufficiently allege standing and immediacy to state a claim under the Declaratory Judgment Act because her children, ages five and eight years old, are years away from attending high school.

**G.      Count VII is dismissed without prejudice as to N.Y. and Yannutz, it may
proceed as to Doe.**

Count VII is brought by Moore against N.Y., Yannutz, and Doe.

As to N.Y., N.Y. asserts the negligence claim should be dismissed because "Plaintiffs go
to great lengths to construe the actions of N.Y. as anything but negligent." *See* Yannutz Mem.
19, ECF No. 34.  Plaintiffs do not address this argument in their response.  *See* Pls.' Resp.
Yannutz Mem. 7-8, ECF No. 38. Rather, they generally refer to the Amended Complaint.  *See id.*
The only factual allegations pertaining to N.Y. in the Amended Complaint relate to the two
pictures N.Y. posted on his Instagram account and to his criminal charge arising therefrom.  *See*
Am. Compl. ¶¶ 24-28.  Plaintiffs allege N.Y. was charged with a "hate crime" in state court, but
do not specify the exact charge.  As there is no Pennsylvania criminal statute titled "hate crime,"
this Court reasonably infers that N.Y. was charged with harassment.  The harassment statute
provides: "A person commits the crime of harassment when, with intent to harass, annoy or
alarm another, the person: . . . engages in a course of conduct or repeatedly commits acts which
serve no legitimate purpose; or [] communicates to or about such other person any lewd,
lascivious, threatening or obscene words, language, drawings or caricatures."  *See* 18 Pa. C.S. §
2709(3)-(4).  Because N.Y.'s alleged conduct was clearly intentional, a negligence claim is not

---

*See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that the constitutional
minimum of standing contains several requirements, including an injury that is "actual or
imminent, not conjectural or hypothetical" (internal quotations omitted)); *Md. Cas. Co. v. Pac.
Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (explaining that the "difference between an abstract
question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of
degree, and it would be difficult, if it would be possible, to fashion a precise test for determining
in every case whether there is such a controversy").  However, because the claim is not currently
before the Court, it cannot conclusively determine at this time that an amendment would be
futile.  *See Alston*, 363 F.3d at 235 (holding that "even when a plaintiff does not seek leave to
amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative
amendment, unless an amendment would be inequitable or futile").  Amendment is dependent on
Plaintiffs also amending to state a claim an underlying claim against Solanco.

stated.  *See DiSalvio v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553, 561 (E.D. Pa. 2001)

(dismissing the student's negligence claim against the football coach because her allegations

against the coach clearly suggested that he acted with intent).  Although in some circumstances

intentional conduct may be relevant to a negligence claim, such circumstances are not present

here because the allegations show N.Y. intended to bring harm to Moore.  *See In re Diet Drugs*

*(Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 369 F.3d 293, 312 n.11 (3d

Cir. 2004) (holding that where the alleged conduct is intentional, it "may be relevant to

negligence so long as it does not involve intent to bring about the harmful result" (citing Dan B.

Dobbs, The Law of Torts § 116 (2001) ("Intentional conduct and even intentional risk-taking is

analyzed under negligence rules unless the defendant has a purpose to invade the plaintiff's

interests or a certainty that such an invasion will occur.")).  Count VII as to N.Y. is dismissed.

Moore is granted leave to amend to assert a different tort against N.Y. that reflects the intentional

nature of his alleged conduct.  *See Andrews v. Fullington Trailways, Ltd. Liab. Co.*, No. 3:15-

228, 2016 U.S. Dist. LEXIS 88651, at *27 (W.D. Pa. July 8, 2016) (dismissing the negligence

claim but granting the plaintiffs leave to amend to assert an intentional tort).

As to the negligence claim against N.Y.'s parents, the Amended Complaint contains no

allegations that either Yannutz or Doe knew about the harassing conduct of their son N.Y., either

before or when it occurred.  Although the Court could reasonably infer that Yannutz and Doe

were on notice when N.Y. was charged with a hate crime, there are no allegations that N.Y.

made any additional racial comments or committed any further harassing conduct after he was

criminally charged.  *See Price v. Scranton Sch. Dist.*, No. 11-0095, 2012 U.S. Dist. LEXIS 1651,

at *54-58 (M.D. Pa. Jan. 6, 2012) (dismissing the negligence complaint against the parents

because they did not know about their child's harassing behavior until months later).  Moore has

therefore failed to state a negligence claim against Yannutz and Doe.  However, because the Court cannot say that "no set of facts" could support the claim, Count VII may proceed as to Doe because he has not moved to dismiss the claim.  *See Conley*, 355 U.S. at 45-46.  Count VII is dismissed without prejudice[24] as to Yannutz.  In amending the complaint as to Yannutz, Moore is granted leave to amend the claim as to Doe as well if he so chooses.

### H.      The request for punitive damages may proceed as to Cox and Doe.

Plaintiffs agree to withdraw their punitive damage claims against Solanco.  *See* Pls.' Opp. Solanco Mot. 8.  Solanco's Motion to Dismiss the punitive damages claim against Solanco is therefore granted.

In the absence of any viable claim against N.Y. or Yannutz, the request for punitive damages as to them is moot.  Further, Moore's punitive damages claim fails as a matter of law as to Yannutz and Doe under Count VII, negligence.  *See Lerner v. Sherry Lake Apartments, Inc.*, No. 84-6119, 1986 U.S. Dist. LEXIS 28052, at *12 (E.D. Pa. 1986) (holding that the claim for punitive damages "must be supported by facts tending to show that the defendants' conduct was more serious than the mere commission of the underlying tort of negligence").  The request for punitive damages against Yannutz and Doe under Count VII is dismissed with prejudice. Because the Court cannot conclude that no set of facts[25] could support a punitive damages award against Doe under Count V, § 1985 conspiracy, the request for punitive damages against him in this count may proceed.

---

[24]      The Court is unable to determine whether an amendment would be futile and therefore gives leave to amend.  *See Alston*, 363 F.3d at 235.  Importantly, such amendment is dependent on Moore also being able to amend to state a claim against N.Y.  *See Price*, 2012 U.S. Dist. LEXIS 1651, at *54 (holding that if a plaintiff fails to state a claim against the student-defendants, "there can be no liability for negligence on behalf of the parents").

[25]      *See Conley*, 355 U.S. at 45-46.

Finally, the Court considers whether Moore has stated a claim for punitive damages against Cox, for allegedly violating Moore's rights under § 1981 and the Equal Protection Clause of the Fourteenth Amendment.  At this stage of the proceedings and based on the allegations that Cox repeatedly used the n-word to refer to Moore, Moore has stated a claim for punitive damages.  *See Williams v. Lenape Bd. of Educ.*, No. 17-7482 (RBK/JS), 2020 U.S. Dist. LEXIS 77757, at *52 (D.N.J. May 4, 2020) (concluding that the punitive damages claim under § 1983 against the school board for turning a blind eye to the plaintiff's complaint that he was repeatedly harassed and called the n-word in the locker room survived summary judgment).

## V.    CONCLUSION

Although Cox's alleged conduct is extremely disturbing, it does not allow Plaintiffs to ignore the required elements of each claim brought against him or the other Defendants.  The Amended Complaint does state a claim by Moore against Cox pursuant to § 1983 for violations of Moore's rights under § 1981 and the Equal Protection Clause.  Solely due to the fact that Doe has not joined in the motions to dismiss, Counts V and VII as to Doe, only, may also proceed. All other parties and claims are dismissed.  The Motions to Dismiss filed by Solanco and by N.Y. and Yannutz are granted in their entirety.  Cox's Motion to Dismiss is granted in part and denied in part as discussed above.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge